THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 14-_____ |
| | : | DATE FILED: _____ |
| CHRISTOPHER SARIDAKIS | : | VIOLATION:<br>15 U.S.C. §§ 78j(b), 78ff, and 17 C.F.R.<br>§§ 240.10b-5 and 240.10b5-1(securities<br>fraud – insider trading - 1 count) |
| | : | |
| | : | 18 U.S.C. § 2 (aiding and abetting) |

## INFORMATION

## COUNT ONE

THE UNITED STATES ATTORNEY CHARGES THAT:

**The Defendant and Relevant Entities**

At all times relevant to this information:

1.  GSI Commerce, Inc. ("GSIC") was a publicly-traded e-commerce marketing services company with headquarters in King of Prussia, Pennsylvania. GSIC's stock was registered under Section 12(g) of the Securities Exchange Act of 1934 and was traded on the National Association of Securities Dealers Automated Quotations ("NASDAQ") under the ticker symbol "GSIC."

2.  eBay, Inc. ("EBAY"), was a publicly-traded internet consumer-to-consumer company with headquarters in San Jose, California. EBAY's stock was registered under Section 12(g) of the Securities Exchange Act of 1934 and was traded on the NASDAQ under the ticker symbol "EBAY."

3.  Defendant CHRISTOPHER SARIDAKIS was a senior executive at GSIC, holding the position of Chief Executive Officer for Global Marketing Services. In performing his various duties, defendant SARIDAKIS was regularly in possession of material, non-public information (inside information) concerning GSIC. Defendant SARIDAKIS owed a fiduciary duty to GSIC and its shareholders regarding such inside information.

4.  Cooperating Witness One (CW1) was a senior executive in the media and advertising sector who had a business relationship with defendant CHRISTOPHER SARIDAKIS since 2003, when they had worked together at the same company. CW1 was aware of defendant SARIDAKIS' position within GSIC.

## The SEC and the Securities Law

5.  The United States Securities and Exchange Commission (the "SEC") was an independent agency of the United States, which was charged by law with the duty of protecting investors by regulating and monitoring, among other things, the purchase and sale of publicly traded securities. Among the national securities markets regulated by the SEC were the New York Stock Exchange and NASDAQ. The SEC places certain requirements on publicly traded companies including the following:

   a) The antifraud provisions of the federal securities laws, including Section 10b of the Exchange Act, codified at Title 15, United States Code, Section 78j(b), and Rule 10b-5 thereunder, codified at Title 17, Code of Federal Regulations, Section 240.10b-5 prohibited fraudulent activities in connection with the buying and selling of securities, including "insider trading."

b) "Insider trading" was generally defined as trading a security, in violation of a fiduciary duty, on the basis of material, nonpublic information about a public company.

c) Rule 10b5-1, codified at Title 17, Code of Federal Regulations, Section 240.10b5-1, effective October 23, 2000, provided that a purchase or sale of a security was made "on the basis of" material, non-public information when the person making the trade was aware of the material, non-public information at the time of the trade.

d) GSIC's company policy in fact states that "Insiders are prohibited from discussing non-public material information with any person outside of the Company or otherwise disclosing non-public material information outside of the Company, unless and only to the extent required in the normal performance of assigned responsibilities."

## EBAY's ACQUISITION OF GSIC

6.      Beginning in or about January 2011, senior executives of GSIC and EBAY discussed the possibility of EBAY acquiring GSIC with the exception of its licensed sports merchandise business or consumer engagement businesses.  GSIC expressed that it would not be interested in an acquisition until it could complete a pending acquisition in a sports merchandise business, which was subsequently determined would close on or about March 15, 2011.  On or around February 15, 2011, senior executives of GSIC and EBAY held a call and discussed that a previously signed non-disclosure agreement applied to the parties' discussions regarding a

potential acquisition. On or about March 27, 2011, the Boards of Directors of EBAY and GSIC agreed to terms related to the merger including a purchase price of $29.25 per GSIC share.

7. The merger discussions between GSIC and EBAY were material, non-public information (inside information). SARIDAKIS was privy to the inside information regarding the merger, having been briefed in or about mid-February 2011 about the merger discussions between GSIC and EBAY.

8. On or about March 28, 2011, prior to the market opening, NASDAQ halted trading of GSIC stock. Shortly thereafter, EBAY publicly announced that it would acquire GSIC in a cash deal at a price of $29.25 per share of GSIC common stock, a premium of over 50% to the previous day's closing stock price and a 47% premium to the average closing stock price for the previous 30 days prior to the announcement.

9. On or about June 17, 2011, the merger was consummated, with current shareholders of GSIC receiving $29.25 per share in cash plus $0.33 as part of a shareholder litigation settlement.

10. From at least on or about March 20, 2011 through on or about March 28, 2011, defendant

**CHRISTOPHER SARIDAKIS,**

willfully, directly and indirectly, and by aiding and abetting, by the use of means and instrumentalities of interstate commerce and of the facilities of a national securities exchange, used and employed manipulative devices and contrivances in connection with the purchase and sale of securities, in contravention of the rules and regulations prescribed by the Securities and Exchange Commission, namely, 17 C.F.R. §§ 240.10b-5 and 240.10b5-1, by (a) employing a device, scheme, and artifice to defraud and (b) engaging in acts, practices and courses of dealing

which would and did operate as a fraud and deceit upon persons in connection with purchases and sales of GSIC securities.

In violation of Title 15, United States Code, Sections 78j(b) and 78ff, Title 17, Code of Federal Regulations, Section 240.10b-5, and Title 18, United States Code, Section 2.

## THE SCHEME

11. It was a part of the scheme that defendant CHRISTOPHER SARIDAKIS willfully, directly and indirectly, by use of the means and instrumentalities of interstate commerce, and the facilities of national securities exchanges, used and employed manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon any person, in connection with the purchase and sale of GSIC securities, in violation of Title 15, United States Code, Sections 78j(b) and 78ff.

12. It was a part of the scheme that defendant CHRISTOPHER SARIDAKIS used, and aided and abetted the use of, inside information in order to execute transactions in GSIC securities. This inside information was information not available to the public at large, and material in nature such that an average investor would have wanted to know the information. Some of the means by which the defendants effectuated the fraudulent scheme were as follows:

    a) Defendant CHRISTOPHER SARIDAKIS, in violation of his fiduciary duty owed to GSIC and GSIC shareholders, and in violation of GSIC company policy, shared inside information with CW1 by encouraging CW1 to purchase

       GSIC shares prior to the merger. CW1 was aware of defendant SARIDAKIS' position within GSIC and the material, nonpublic nature of the information.

  b) CW1, based upon the inside information, and knowing that defendant CHRISTOPHER SARIDAKIS' provision of inside information to CW1 violated defendant SARIDAKIS' fiduciary duties to GSIC and its shareholders, made or caused to be made purchases of GSIC shares.

  c) In total, defendant CHRISTOPHER SARIDAKIS' tip caused approximately $260,304.34 in illegal profits. The defendant used the wires and facilities of interstate and foreign commerce in furtherance of the conspiracy.

13. On or about March 20, 2011, beginning at approximately 11 p.m. Eastern Standard Time, defendant CHRISTOPHER SARIDAKIS and CW1 exchanged a series of text messages that began with defendant SARIDAKIS asking CW1 if he "...own[ed] our [GSIC] shares?" CW1 replied, "no, but it's cheap." This response led defendant SARIDAKIS to tell CW1 "you should." CW1 responded with "ok," to which defendant SARIDAKIS replied, "soon." CW1 told defendant SARIDAKIS that he/she would purchase (GSIC) shares "tomorrow am. Under $20" and defendant SARIDAKIS confirmed "exac[t]ly." Defendant SARIDAKIS' conveyance of material non-public information violated the fiduciary duty he owed to GSIC and its shareholders, and violated GSIC's company policy on insider trading.

14. On or about March 22, 2011, following the receipt of the text messages, while in possession of the inside information, and knowing defendant CHRISTOPHER SARIDAKIS' position as a senior executive at GSIC, CW1 purchased and caused to be purchased 25,000 shares of GSIC stock on margin for approximately $470,000.

15. On or about June 20, 2011, CW1 received $737,500 in exchange for the 25,000 shares of GSIC, equating to an illicit profit of $260,304.

All in violation of Title 18, United States Code, Section Sections 78j(b) and 78ff, Title 17, Code of Federal Regulations, Section 240.10b-5, and Title 18, United States Code, Section 2.

A TRUE BILL:

ZANE DAVID MEMEGER
United States Attorney